## AUTHORITY OF ONE HOLDING A RESTRICTED PROXY.

Circuit Court of Medina County.

STATE OF OHIO, EX REL ARTHUR VAN EPP, PROSECUTING
ATTORNEY, v. H. P. McINTOSH ET AL.

Decided, December 31, 1912.

*Corporations—Elections—Holder of Proxy for a Particular Purpose May
Not Vote on Other Questions—Directors of Corporations Must be
Bona Fide Stockholders.*

1. A restricted proxy, which authorizes the holder thereof to vote for
   certain men for directors at the annual meeting of a corporation
   or at any adjourned meeting, does not give the holder thereof the
   right to vote upon any other question coming before the meeting,
   and a motion to adjourn the meeting carried by counting the votes
   cast by the holder of such proxy is of no effect.
2. Where five persons are voted for to fill four vacancies upon a board
   of directors and it is impossible to determine which of the five
   were elected, none of them can hold office as the result of the elec-
   tion.
3. It is an essential qualification for holding the position of director in
   a corporation, that the person elected be a *bona fide* stockholder in
   such corporation; hence, one to whom one share of another's
   stock has been transferred for the sole purpose of making him
   eligible as a director, but who has no financial interest in the
   corporation, is ineligible to the position of director.

*M. B. & H. H. Johnson,* for plaintiff.
*Henry & McGraw,* contra.

MARVIN, J.; WINCH, J., and MEALS, J., concur.

The petition states that the following named five defendants
have usurped the office of directors of the Wheeling & Lake
Erie Railroad Company for the term of three years, viz: Joseph
Ramsey, Jr., R. E. Slaven, F. E. Palmer, W. D. Holliday and
John J. Taussig; that the following named five defendants have
usurped such offices for the term of two years, viz: H. B. Mc-
Graw, George P. Rust, C. A. Henry, A. G. Webb and S. W.
Carey; and that the following named five defendants have

usurped such office for the term of one year, viz: F. J. Reynolds, C. M. Spitzer, R. B. Cohen, S. P. Avery and P. A. Worthington.

The petition avers that none of the defendants are entitled to hold the office of director of said railroad company.

The petition prays that the fifteen defendants, hereinbefore named, may be ousted from the offices severally claimed by them, and that the following named thirteen defendants may be adjudged to be entitled to hold the offices of directors of the Wheeling & Lake Erie Railway Company, viz: H. P. McIntosh, E. W. Ogleby, George S. Russell, C. H. Daugherty, Wm. R. Nicholson, Clarence L. Harper, Charles C. Jackson, Myron T. Herrick, E. S. Cook, James C. Chapin, Richard Sutro, Harry Bronner and F. H. Eckers.

To this petition the defendant, Ramsey, filed an answer in which he denies that he and the other fourteen defendants, whom the petition avers are usurping the office of directors, are so usurping such office, but says that they are the lawful board of directors of the company, duly elected for the several terms which the petition avers they are usurping, at an election by a stockholders' meeting held June 4, 1912, and he prays that he and the fourteen others named in the petition as usurpers may be confirmed in said offices and that the petition be dismissed.

Twelve of the remaining defendants, charged in the petition to be usurpers, answered, adopting the answer of Ramsey and joining in its prayer. Neither the defendant, John J. Taussig, charged as usurping a three year term, nor the defendant, P. A. Worthington, charged with usurping a one year term, file an answer to the petition.

The defendants, H. P. McIntosh, E. W. Ogleby and George S. Russell, three of those averred in the petition to be legal directors, file an answer in which they state that they are no longer directors, their terms having expired and their successors elected since the commencement of this action.

The defendants, C. A. Daugherty, Wm. E. Nicholson, Clarence Harper, Chas. C. Jackson, Myron T. Herrick, E. S. Cook, James C. Chapin, Richard Sutro, Harry Bronner, F. H. Eckers, C. M. Spitzer and B. A. Worthington, file answer denying that either

Ramsey, Slaven, Palmer, Holliday, Taussig, McGraw, Rust, Henry, Webb, Carey, Reynolds, Cohen or Avery is entitled to the office of director of the company. It is not denied by this answer that Spitzer and Worthington are lawful directors, though it is denied in the petition.

Many other matters are set out in the pleadings, especially in the answer of the defendant, Ramsey, but, except as attention is called to them later on in this opinion, it is not deemed necessary to consider them for a proper determination of this case.

If those named in the petition as usurpers are entitled to hold the office of director, it is because they were lawfully elected to the position at a stockholders' meeting June 4, 1912.

Without discussing how it came about that such meeting was held on that date, we hold that there was a lawful stockholders' meeting on that day, which meeting had authority and right to elect directors, insofar as there were vacancies on the board to fill. A full board consisted of fifteen members.

At a stockholders' meeting held for the purpose of electing directors on the 14th day of June, 1911, there were elected for the period of one year, beginning May 3, 1911, C. M. Spitzer, H. P. McIntosh, E. W. Ogleby, George S. Russell and C. H. Daugherty. Without question, the meeting of June 4, 1912, it being as we hold an authorized stockholders' meeting for the purpose, had a lawful right to elect five directors to succeed the five last named, whose term of one year had expired.

This meeting of June, 1912, undertook to elect as successors to these five, the first five named in the petition as usurpers, viz: Ramsey, Slaven, Palmer, Holliday and Taussig. But it is contended on the part of those who may be denominated the McIntosh board, that is, those who claim that there should be an ouster of such as are named in the petition as usurpers, that even if this meeting had authority of law to elect directors, no election was actually had.

At the meeting a majority of the stock was represented by John H. Watson, Jr., as proxy for Walter S. Wilson.

This is said notwithstanding the claim on the part of the so-called usurpers that Wilson was not such an owner of the ma-

jority of the stock as to authorize him to vote it. We are treating the case as though Wilson were authorized to vote this majority of stock and therefore had authority to name a proxy to vote it for him. This proxy reads as follows:

"*Know All Men By These Presents*:

"That I, Walter S. Wilson, do hereby constitute and appoint George Cook Ford and John H. Watson, Jr., both of Cleveland, Ohio, or either of them, my attorney and agent for me, and in my name, place and stead, to vote as my proxy at the annual meeting of the stockholders of the Wheeling & Lake Erie Railroad Company, appointed to be held at the general office of the company, in Room 418, Perry Payne Building, in the city of Cleveland, Ohio, on Wednesday, the 1st day of May, 1912, at two o'clock P. M., or at any adjournment thereof, according to the number of votes that I should be entitled to vote if then personally present, for the following named persons, or any of them, as directors of said the Wheeling & Lake Erie Railroad Company, viz:

"For three years from May 3, 1912—C. M. Spitzer, H. P. McIntosh, E. W. Oglebay, George S. Russell, C. H. Daugherty.

"And I hereby give and grant unto my said attorneys and agents and each of them full power to substitute in his place and stead, as attorney and agent for me hereunder, any person or persons as he shall deem best; hereby ratifying and confirming all that my said attorney and agent, or his substitute or substitutes shall lawfully do in the premises by virtue hereof.

"In Witness Whereof, I have hereunto set my hand and seal the twenty-seventh day of April, in the year one thousand nine hundred and twelve.

"Sealed and delivered in the presence of W. C. Betts.
"WALTER S. WILSON."

The minority of the stock was represented by several persons. The meeting was not altogether harmonious and an effort was made by Watson, holding the proxy for Wilson, to adjourn the meeting. It is claimed that he effectually, in law, did so adjourn the meeting.

Without considering the question of whether an adjournment could be made by one person holding a majority of the stock as against several holding a minority, we are of the opinion that Watson, under his proxy, was not authorized to adjourn the

meeting. He was authorized to do one thing, to-wit, to vote for C. M. Spitzer, H. P. McIntosh, E. W. Oglebay, George S. Russell and C. H. Daugherty as directors for the term of three years from May 3, 1912. A careful examination of this proxy will show that his authority went to that extent and no further.

In Section 1262 of *Machen's Modern Law of Corporations*, it is said that a proxy "may generally do all that the principal might have done if present, and hence may vote not merely on the main question, but also on all subsidiary and incidental motions, such, for instance, as a motion to adjourn; although, of course, a proxy may be framed in such restricted terms as to confine the agent's right to vote to some one matter, such as the election of directors."

Clearly the proxy under which Mr. Watson was acting authorized him to vote on one subject only, and directed how that vote should be cast, and if a proxy can be so restricted as stated in the text just quoted, this would seem to be such a proxy.

In the case of *Cumberland Coal Co.* v. *Sherman*, 30 Barbour, 553, at page 577 it is said:

"A very large proportion of stockholders represented at that meeting were there by attorney, and the power given only authorized them to vote for the election of directors. It did not authorize them to bind their principals to acts and in reference to matters not authorized or assumed by the power."

And then the court goes on to say that any ratification of acts of the directors by one holding such a power of attorney did not bind anybody, because his authority was restricted by the terms under which he acted.

In *Cook on Corporations*, Section 610, it is said:

"The ordinary proxy being intended to be for an election merely, does not enable the proxy to vote to dissolve the corporation or to vote upon other important business, unless the proxy itself, in general or special terms, gives the proxy the power to vote on such questions."

After the effort on the part of Watson to adjourn, the meeting proceeded to elect, as successors to the five whose terms, by

limitation, had expired, the first five named in the petition as usurpers, to-wit, Ramsey, Slaven, Palmer, Holliday and Taussig.

We are of the opinion, and so hold, that the prayer of the petition for the removal of these five men must be denied, and that they must each be confirmed in the office of director of the company.

Beyond the election of these five, the meeting of June 4, 1912, had no authority to elect, except to fill vacancies not resulting from the expiration of the terms of those elected in 1911.

It is claimed that there were such vacancies because, it is said, a considerable number of those elected in 1911 were ineligible to the position to which they were chosen.

As to those who were elected for three years in 1911, we find no one of them to have been, at the time of such election, a *bona fide* stockholder of the corporation. That being true, there were five vacancies to be filled in lieu of these, and to succeed these there were elected McGraw, Rust, Henry, Webb and Carey. These men are entitled to hold the positions to which they were elected because of the vacancies resulting from the ineligibility of those who had been elected for three years.

Of those elected in 1911 for two years, we find that one of them, to-wit, Myron T. Herrick, was a *bona fide* stockholder at the time of his election, and, so far as appears from the evidence, remained such stockholder and is entitled to hold the position to which he was elected.

None of the others who were elected for three years in 1911, at the time of their election was a *bona fide* stockholder in the corporation, and hence, as to each of them, there was a vacancy; but as to those elected in 1912 to fill the vacancies claimed to have been occasioned by the ineligibility of those elected in 1911 for two years, since there were five voted for to fill such claimed vacancies, whereas there were but four such vacancies, it is impossible to say that any of those voted for in 1912 to fill these vacancies was elected. Five men were voted for; there were but four vacancies to fill. Neither we nor any one else can select from the five thus voted for, the four who are to fill these vacancies. The result is that those voted for to fill such vacan-

cies, to-wit, Reynolds, Spitzer, Cohen, Avery and Worthington, can not hold by reason of this election.

What has been said as to those who were elected in 1911 not being *bona fide* stockholders we think is borne out by the testimony of Henry B. Henson. He is the secretary of the Wheeling & Lake Erie Railroad Company. He testifies from personal knowledge and from the records of the company, and shows that the only stock held by McIntosh, Chapin, Sutro, Bronner, Eckers, Nicholson, Harper, Jackson, Cook, Oglebay, Russell and Daugherty was one share each; that these shares were transferred to them from one Wilson on the 12th day of June, 1911. Wilson is the man in whom a majority of the stock stood at the time of the election both in 1911 and 1912. Wilson held this stock in his name; it was stock which had been pledged by the owner of the Mercantile Trust Company, as security for an indebtedness of such owner of the stock to said pledgee. The said stock so pledged to said trust company was by it transferred to said Wilson, such transfer being entered on the books of said railroad company. Said Wilson had no interest in said stock except as trustee for said trust company, and it may be doubted whether Wilson had a right to sell any shares of that stock. But the earlier testimony of Mr. Henson in this same deposition shows that transfers of stock were made on the books of the company for the purpose only of enabling the transferees to be eligible as directors, and we think, in the absence of the testimony of these transferees, none of whom testify that they had autually purchased the stock, the only ones testifying showing by their testimony that their holding was only nominal, we are justified in holding that these transfers made by Wilson to the several parties named, were made for the purpose of enabling these men to hold the position of directors in this corporation.

It is significant that these several transfers were made immediately preceding the annual election of directors in 1911, and that each of such transferees was, at that election, chosen as a director.

That it is an essential qualification for one to hold the position of director in a corporation, to be a *bona fide* stockholder in such

corporation, we think is clear, first, from the language of the General Code, Section 8661, which reads:

"And a majority of such directors must be citizens of this state.    All directors and executive officers shall be holders of stock of the company for which they are chosen, in an amount to be fixed by the by-laws."

That the language "shall be holders of stock" means "*bona fide* holders," is held by our Supreme Court in *Bartholomew* v. *Bentley*, 1 O. S., 37.   In that case, it is true, the court found that those who claimed to be directors, not only were not *bona fide* owners of any stock, but that they had entered into a combination for the purpose of defrauding; but they were held not to be eligible because not coming within the terms of the statute, which required each director to be a stockholder at the time of his election.

Again, in the case of *The Deuber Co.* v. *Daugherty*, 62 O. S., 589, it is held that one Coburn, to whom stock had been assigned for the purpose of rendering him eligible as a director, but who had no actual interest in the stock, was therefore ineligible to the position of a director.

We can think of no valid reason for the provision in the statute, that in order that one may be a director of a corporation he must be a stockholder, except that the business of a corporation must be controlled and managed by those who have a *bona fide* interest in it.   There is no greater protection to stockholders, or to those dealing with a corporation, in having a board of directors made up of those who have no *bona fide* interest in the corporation, than there is in having a board of directors made up entirely of those who are not even nominal stockholders.

The conclusion to which we come, therefore, is:

As already stated, that the petition must be dismissed as against Ramsey, Slaven, Palmer, Holliday and Taussig, for the reason that they were elected to fill vacancies occurring by expiration of term; that it must be dismissed as against McGraw, Rust, Henry, Webb and Carey, they having been elected to fill vacancies caused by the ineligibility of those assuming to act under the election of 1911; that it must be sustained as against Rey-

nolds, Spitzer, Cohen, Worthington and Avery, because, as already pointed out, they were not elected.

And so we hold, that these in whose favor we dismiss the petition, together with Myron T. Herrick, who appears to have been a stockholder at the time of his election in 1911 for the term of three years, are entitled to hold office.